```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                     CHARLOTTE DIVISION
                        3:99CV15-M
```

**ASHUTOSH RON VIRMANI,**       )
         **Plaintiff,**   )
         **V.**        )
**PRESBYTERIAN HEALTH SERVICES**       )     **ORDER**
**CORP., et al.,**       )
         **Defendants**   )
_____)

**THIS MATTER IS BEFORE THE COURT** upon Defendants' Motion for Summary Judgment and Plaintiff's Motion to Amend Complaint [docs. 137, 128].

**I. Factual and procedural background**

Plaintiff is an obstetrician-gynecologist who was granted medical staff and clinical privileges at Defendant Presbyterian Hospital-Matthews in 1990. Plaintiff maintained a solo practice in Matthews, North Carolina.

In November 1994, Plaintiff punctured a patient's iliac artery during a laparoscopic procedure, creating a life-threatening emergency which caused the patient to be hospitalized for several weeks. As a result of this incident, Defendants decided to do a focused review of Plaintiff's cases. This decision resulted in a five-month peer review by Presbyterian's OB/GYN Committee lasting from March through August of 1995 ("First Peer Review").

The First Peer Review committee reviewed all cases in which Plaintiff had been the primary care physician since August 1993. Finding 24 of 102 cases reviewed to be "problematic," Defendants suspended Plaintiff's privileges pending review by the full medical

board. Following a full hearing on November 21, 1995, the Board voted to terminate Plaintiff's staff privileges. Defendants' Board of Trustees upheld that decision on January 19, 1996.

On January 22, 1996, Plaintiff filed a breach of contract action against Defendants in state court alleging that Defendant Presbyterian breached its bylaws by summarily suspending his privileges. Specifically, Plaintiff alleged that the hospital did not allow him to respond in writing to the conclusions of the Peer Review Committee prior to their submission to the Medical Board.[1] Plaintiff maintained that Defendants breached the bylaws provision because the decision-makers were doctors who were in economic competition with him. Plaintiff did not allege any claim of discrimination. On July 30, 1996, the state court entered an order finding that Presbyterian had violated its bylaws by not allowing Plaintiff to submit a written response. The court ordered that a new peer review be conducted by a committee of OB/GYN's who did not practice in Plaintiff's geographic area.

In August of 1997, the North Carolina Court of Appeals affirmed the lower court order to the extent it required a second peer review, but reversed the ruling that it must be conducted by OB/GYN's from outside Plaintiff's geographic area. *Virmani v. Presbyterian Health Services Corp.*, 488 S.E. 2d 284, *rev. denied*,

---

[1] Although Plaintiff was unable to submit a written response at one point in the review process, he was able to respond in full, with the assistance of his attorney, prior to the ultimate decision to suspend his privileges. Plaintiff has never shown that this lost opportunity would have changed the decision made.

492 S. E. 2d 38 (1997). Defendants then terminated the external review they began in response to the lower court order and proceeded with a second, internal peer review ("Second Peer Review"). This Second Peer Review resulted in a decision by the Medical Board and Board of Trustees to terminate Plaintiff's staff privileges.

Plaintiff filed this action on January 15, 1999. In it, he alleges for the first time that the decision to do a focused review of his cases following the laparoscopic injury was racially motivated, not economically motivated as he claimed in state court.[2]

Plaintiff alleges the following causes of action in his Complaint: (1) discrimination in violation of 42 U.S.C. § 1981; (2) discrimination in violation of 42 U.S.C. § 1985; (3) intentional infliction of emotional distress; and (4) negligent infliction of emotional distress. On November 24, 2005, Plaintiff filed a Notice of Voluntary Dismissal as to the § 1985 claim and both emotional distress claims. Contemporaneously with the Notice of Dismissal, Plaintiff moved to amend the Complaint to add a claim for breach of contract. Defendants object to the amendment and move for summary judgment on the remaining § 1981 claim.

The primary evidence relied upon by Plaintiff is that he was subjected to harsher disciplinary actions than several white

---

[2] Plaintiff did not file a discrimination claim with the EEOC, nor did he raise the issue of race discrimination in the state court proceedings.

comparator physicians who committed medical mistakes that Plaintiff alleges were as serious, or more serious, than his. Defendants have vigorously attacked this evidence, arguing that Plaintiff is not similarly situated to these comparator physicians because the incidents, the circumstances, and the relevant decision-makers are dissimilar.

For the following reasons, Defendants' motion for summary judgment will be granted and Plaintiff's motion to amend will be denied.

**II. Analysis**

*Motion for Summary Judgment*

Prior to considering the pending motion for summary judgment, this Court ordered supplemental briefing on several issues, including claim preclusion. After reviewing the pleadings and the record, it is clear that Plaintiff's discrimination claim is precluded by the earlier state court action. Accordingly, Defendants' motion for summary judgment is granted on this ground and Defendants' remaining arguments will not be addressed.

**A. Relevant legal principles**

Under the doctrine of claim preclusion, a prior judgment bars the re-litigation of claims that were raised or could have been raised in the prior litigation. *Nevada v. United States*, 463 U.S. 110 (1983); *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enterprises)*, 81 F.3d 1310, 1315 (4th Cir. 1996).

Claim preclusion promotes economy in the use of judicial resources and finality in litigation. *See Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 400-01 (1981); *Nevada v. United States*, 463 U.S. 110, 129-30 (1983). It "rests on a determination that justice is better served by attributing finality to judgments ... than by second efforts at improved results." Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4415. Claim preclusion is an affirmative defense which must be raised by the defendant in its response or else waived under Federal Rule of Civil Procedure 8. Defendants asserted this defense in their Answer [doc. 8, p. 24].

The Full Faith and Credit Statute, 28 U.S.C. § 1738, obligates federal courts to apply state preclusion rules to determine whether a prior state court judgment has preclusive effect. *Kremer v. Chemical Construction*, 456 U.S. 461 (1982). This principle applies to federal civil rights actions following state court actions. *Migra v. Warren City School District Bd. of Educ.*, 465 U.S. 75 (1984)(federal action under 42 U.S.C. § 1983). This Court must therefore look to the law of North Carolina, in whose courts Plaintiff first sought relief against these Defendants, to determine whether this action is barred. *Mears v. Town of Oxford,* 762 F.2d 368, 371 (4th Cir.1985).

Under North Carolina law, the doctrine does not apply to all claims that were raised or could have been raised in the prior litigation. It bars such claims only when the following three

elements are satisfied: (1) the prior judgment was final and on the merits; (2) the parties are identical, or in privity, in the two actions; and (3) the claims in the second matter arise out of the same cause of action involved in the earlier proceeding. *Thomas M. McInnis & Assoc. v. Hall*, 318 N.C. 421 (1986).

Under North Carolina law, for purposes of claim preclusion, strict identity of the issues is not required, so long as the issues arise under the same facts that gave rise to the previous action. *See Kabatnik v. Westminster Co.*, 63 N.C. App. 708 (1983). Claim preclusion is "intended to force parties to join all matters which might or should have been pleaded in one action," and "applies to those issues which could have been raised in the prior action but were not." *Chrisalis Properties, Inc. v. Separate Quarters, Inc.*, 101 N.C. App. 81 (1990), *disc. review denied*, 328 N.C. 570 (1991) (citations omitted). Further, a party cannot avoid the application of claim preclusion merely by "shifting legal theories or asserting a new or different ground for relief." *Northwestern Financial Group v. County of Gaston*, 110 N.C. App. 531, *disc. review denied*, 334 N.C. 621 (1993).

### B. Application

It is undisputed that the prior judgment was final and on the merits and that the parties are identical. The issue here is whether the subsequent discrimination claim arises out of the same facts that gave rise to the earlier proceeding. For the following reasons, this Court finds that the claims in the second case

("Virmani II") clearly arise out of the same cause of action as the state court case ("Virmani I").

Plaintiff makes several arguments that claim preclusion does not apply to the facts of this case. First, he argues that claim preclusion does not apply because he could not have brought the claim in 1996. Second, he argues that claim preclusion does not apply because the claims are not identical for claim preclusion purposes.

### 1. Existence of claim

Plaintiff contends that he could not legally or ethically have brought the discrimination claim in 1996 because, at the time, he knew only that the by-laws had been violated. Plaintiff avers that he did not "possess the evidence that he had been treated differently," and contends that:

> he did not know exactly how the Peer Review Committee evaluated his cases, and he certainly did not have the evidence that non-Indian physicians who had been found by the Peer Review Committee to have committed multiple significant deviations from the standard of care, some resulting in grave injuries to and death of patients, had not been subjected to a focused review, had not been summarily suspended, and had not had their privileges terminated.

[Doc. 165 , p. 28, 29].

Plaintiff argues that because he was not aware of this information at the time of filing the first claim, his attorney did not have a sufficient factual basis to file the discrimination claim without risking Rule 11 sanctions. This argument is unpersuasive for several reasons.

7

First, whether a plaintiff has knowledge of a claim is irrelevant for claim preclusion purposes. The test is whether the claim could have been brought in the first proceeding - it does not require the a party actually be aware of the claim. *See, e.g., First Union Commercial Corp. v. Nelson, Mullins, Riley, & Scarborough (In re Varat Enterprises)* 81 F. 3d 1310 (4th Cir. 1996)(for claim preclusion principles, "it is the existence of the present claim, not party awareness of it, that controls"); *Allie v. Joy Manufacturing Co.*, 914 F. 2d 39 (4th Cir. 1990)(claim is barred by claim preclusion principles if the claim existed at the time of the first action and might have been offered).

Second, even if knowledge was relevant, it is clear that Plaintiff was aware of the claim during the pendency of the state court action. Plaintiff contends, for the first time, that he did not become aware of possible disparate treatment until October of 1998. Protesting that he had no reason to think he had been treated differently on the basis of race in 1997, Plaintiff's argument is carefully drafted to put his realization that he had suffered discrimination until just after the state court action concluded on appeal. Indeed, Plaintiff goes so far as to argue that the Defendants "lulled" him into inaction until after the state court action was over. Plaintiff trumpets Defendants' decision to change to an internal peer review (as provided for in the hospital's by-laws) as evidence that they were not being fair to him. Plaintiff avers that this decision to change to an internal review was a

8

shock to him and made him think, for the first time, that Defendants were not treating him the same as white physicians.

Yet, Plaintiff could hardly have been surprised that Defendants changed to an internal review because Defendants had been fighting to have that review conducted internally (as provided in the bylaws) since the state trial court judgment was rendered in July of 1996. As Plaintiff alleges in his Complaint, after the state trial court ruled that Defendants must do a review using physicians outside Plaintiff's geographic region, Defendants repeatedly sought stays of their obligation to do a Second Peer Review while seeking review of the lower court ruling. In these appeals, Defendants argued, *inter alia*, that Plaintiff was only entitled to an internal review as provided in the bylaws and that the court had no equitable authority to give Plaintiff more rights than he had under his contract. When the appellate court agreed and struck down that portion of the ruling, Defendants terminated the costly external review and began an internal review as provided by the contract. It is hard to imagine why Plaintiff would be surprised that Defendants would implement a change for which they had been fighting for almost a year.

Moreover, there is a myriad of evidence contradicting Plaintiff's new assertion that it was not until October of 1998 that he thought he was treated differently on the basis of race. First, Plaintiff has testified that he suspected that he was treated differently than the other doctors on the basis of his race

9

since he first began at Presbyterian in 1993 [doc. 138, Ex. B]. Plaintiff also testified that he had argued with his then-lawyer, Mr. William Sitton, over strategy because Plaintiff thought that the first action should have been prosecuted as a disparate treatment case [doc. 166, Ex. 4, pp. 57-59].[3]

According to the Complaint, in September of 1997, (a full year before Plaintiff's own "realization" that he might a victim of discrimination), the Charlotte Medical Society, a group of minority physicians in the Charlotte area, wrote Defendant Presbyterian Hospital on Plaintiff's behalf. They indicated that they had been following Plaintiff's case and characterized Plaintiff as a "minority" physician whose rights needed to be protected in the review process [doc. 1, p. 13-14]. Another group, the Physicians of Indian Origin, wrote a similar letter on Plaintiff's behalf in January of 1998 [doc. 1, p.17]. Plaintiff's own counsel, Tom Bush, wrote two letters in December of 1997, advising Presbyterian that, among other things, Plaintiff thought he had been "home-cooked" by the "white Anglo-Saxon good ole boys" at Presbyterian Hospital [doc. 165, Ex. C].

Given this evidence, even if knowledge of a claim were relevant to this Court's consideration, it is clear that Plaintiff was aware of race as an issue but apparently made a strategic decision *not* to prosecute a discrimination claim.

---

[3] Plaintiff ultimately fired Mr. Sitton (as well as Mr. Bush, Mr. Culotta, and Mr. Haber) and has now retained two more law firms.

Third, as Defendants note, after working his way through the many levels of the internal review and appeal process at the hospital, Plaintiff had much more information about the adverse decision challenged here than most discrimination plaintiffs have at the time of filing a claim of discrimination.[4] Moreover, the evidence cited in the instant Complaint is of alleged comparator incidents which occurred prior to the filing of the first action [doc. 1, para. 93-97]. This information was gleaned from publicly-available court records and could have been presented in 1996 just as it was presented in 1999. *Id.* Given that Plaintiff filed his 1999 action citing most of the same information to which he had access in 1996, it is clear that the claim could have been brought in 1996.

For the foregoing reasons, this Court finds that the discrimination claim existed in 1996 and could have been offered in the state court action. Accordingly, application of the claim preclusion doctrine is not prohibited on this ground.

**2. Identity of claims**

Next, Plaintiff argues that the discrimination claim does not arise under the same facts that gave rise to the previous state court action because the new claim is "largely based" on events occurring after the state court action had concluded. Plaintiff argues, for the first time, that the essential discrimination in

---

[4] Plaintiff further blames his then-lawyer's lack of expertise in civil rights actions for the failure to file the claim. This argument is unsupported by caselaw and irrelevant.

this case was Defendants' decision to change to an internal review. As this decision occurred after the conclusion of the state court action, Plaintiff avers that the claims do not arise out of the same facts for claim preclusion purposes.

This argument stands in marked contrast to the previous theory Plaintiff has vigorously espoused, namely that the First Peer Review was the central discriminatory act. Plaintiff argued that the First Peer Review "sealed Dr. Virmani's fate at Presbyterian. Everything that happened thereafter was due process theater, not reality" [doc. 145, p. 70-71]. Plaintiff has consistently minimized the import of Defendants' actions following the First Peer Review, characterizing them as mere attempts to protect the discrimination that occurred during the First Review. *Id*. at 99-101. Moreover, as Defendants note, in support of this "theater" theory, Plaintiff proffered several experts to opine that Plaintiff's fate was pre-ordained by the alleged discrimination during the First Peer Review and Defendants' actions thereafter were merely taken to protect this prior discriminatory animus. Yet now, for purposes of the claim preclusion argument, Plaintiff discards the central theory of his case because its reliance on a finding that the essential discrimination occurred in the First Peer Review compels a conclusion that the claim arises out of the same facts.

This Court rejects Plaintiff's last-ditch attempt to transform the Second Peer Review from mere "theater" into the lynchpin of his case. This new theory is wholly contradicted by Plaintiff's

12

pleadings, evidence, and admissions, all of which characterize the First Peer Review as the discriminatory action which "sealed his fate." Plaintiff's claim rests upon a finding that discrimination occurred in the First Peer Review and as such, this Court finds that the discrimination claim clearly arises out of the same facts as the state court claim.

Plaintiff further argues that the claims do not arise out of the same facts because the state court action was based upon a narrow procedural violation where no proof of discriminatory intent was necessary or implicated. This is an incorrect reading of the state court action.

In the state court action, Plaintiff *did* allege improper intent, arguing that the Defendants committed the violation because the decision-makers were in economic competition with him. To recover damages under either the Licensure Act, or the federal HCQIA, Plaintiff had to show bad faith by the Defendants. The state court found that Defendants were immunized from economic liability under both the state and federal statutes because they did not act in bad faith. The state court specifically found that Defendants acted with "the reasonable belief that the action was in furtherance of quality healthcare" and with the "reasonable belief that the actions were warranted by the facts known" [doc. 165, Ex. A]. Accordingly, the Defendants' intent was certainly at issue in the state cause of action.

While the claims are different, the alleged wrong is the same.

Plaintiff is re-litigating the same wrong but has simply changed the motivation from greed to discrimination. By merely "shifting legal theories or asserting a new or different ground for relief," Plaintiff cannot avoid the application of claim preclusion. *Northwestern Financial Group v. County of Gaston*, 110 N.C. App. 531, 536 *disc. review denied*, 334 N.C. 621 (1993). Accordingly, application of the claim preclusion doctrine is not prohibited on this ground.

The doctrine of claim preclusion is not only applicable here, but it is particularly appropriate for the following reasons. As discussed above, in the years of litigation in the state courts, Plaintiff made no allegations of possible discrimination.[5] Instead, Plaintiff alleged that Defendants' motive was economic competition. The state court made specific findings about the Defendants' mindset during the First Peer Review, determining that the Defendants did not act in bad faith, that Plaintiff had been afforded substantive and procedural due process, and that "there exists a legitimate concern for the health, safety, and welfare of patients" at Presbyterian if Dr. Virmani's staff privileges are reinstated [doc. 165, Ex. A]. The state court's factual findings are clearly incompatible with Plaintiff's allegation that these same decision-makers acted with discriminatory intent.

---

[5] This Court notes that, in addition to violating Title VII and the civil rights statutes, discrimination is prohibited by the very statute which was at issue in the state court proceeding, the North Carolina Hospital Licensure Act. *See* N.C.G.S. § 131E-85(a)(granting of hospital privileges must be non-discriminatory).

The state court action not only made factual findings that are inconsistent with Plaintiff's current allegations, the ramifications of the remedy Plaintiff pursued are critical to this case. Plaintiff made a strategic decision to cast his claim as one motivated by economic competition, resulting in the remedy of a Second Peer Review. When this remedy failed to reinstate his privileges, Plaintiff filed this action alleging race discrimination, arguing that discrimination in the First Peer Review infected the entire process, including his requested remedy of a Second Peer Review.

If the purported initial discrimination did infect the entire process, the failure to raise this claim during the first action renders the entire state court action meaningless because it granted a requested remedy that was pre-destined to be inadequate, necessitating further litigation. This is inconsistent with the goals of judicial economy and finality of judgments.

Moreover, holding this issue until after the Second Peer Review was complete deprived Defendants of the ability to conclusively defend against Plaintiff's sweeping allegation that the Second Peer Review was infected by the purported initial discrimination. Had Plaintiff raised this allegation in the state court, Defendants might have chosen to continue the Second Peer Review externally so that the Review could not have been later attacked as infected. Instead, they proceeded with the state court-ordered remedy that Plaintiff now attacks as inadequate. In the

end, the Defendants were able to mount a defense to the claim,[6] but only after years of litigation. To allow Plaintiff to have a second bite at this apple is a further waste of judicial resources and is fundamentally unfair to Defendants. Here, "justice is better served by attributing finality to judgments ... than by second efforts at improved results." Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 4415.

For all of these reasons, Plaintiff's failure to raise the discrimination claim in the state court action precludes the claim here.

### *Motion to Amend*

Five years after filing the Complaint in this matter, Plaintiff moved to amend to add a breach of contract claim. This motion was filed on November 9, 2004, well after the close of the lengthy and voluminous discovery period in this case and less than two weeks prior to the deadline for summary judgment motions. Plaintiff seeks to add a claim for breach of contract, alleging a different violation of the bylaws than was alleged in the 1996 state court action. Defendants object, arguing, *inter alia*, that

---

[6] While this Court does not reach the discrimination claim in this opinion, it is important to note that, after years of discovery, Plaintiff still has presented no evidence of a white comparator physician who is sufficiently similarly situated to show discrimination. Plaintiff has presented expert testimony that his mistake was no worse than the isolated mistakes of other white physicians who were not disciplined as harshly as he was. Even assuming this to be true, Plaintiff has not shown that any white OB/GYN: (1) committed the *same* medical mistake as Plaintiff; (2) had 23 other prior, similar problematic cases, as Plaintiff did; (3) had concerns expressed by the nursing staff about their surgical competence, as Plaintiff did; nor (4) had their license suspended by the North Carolina Medical Board for engaging in a sexual relationship with a patient.

16

such amendment should be denied as futile because Plaintiff cannot bring a successive breach of contract claim arising from the same 1995 peer review.

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given where justice so requires. Leave to amend is properly denied where there is evidence of unreasonable delay, prejudice, or bad faith. *See Deasy v. Hill*, 833 F. 2d 38 (4th Cir. 1987); *Gregory v. Harris Teeter Supermarkets, Inc.* 728 F. Supp. 1259 (W.D.N.C. 1990); *GSS Properties v. Kendale Shopping Center*, 119 F.R.D. 379 (M.D.N.C. 1988). Moreover, if relevant caselaw compels dismissal of the amended claim, amendment is futile. *See Burns v. AAF-McQuay*, 166 F. 3d 292 (4th Cir. 1999) (an amendment is futile if it will not survive a motion to dismiss). If an amendment is futile, leave to amend should be denied. *See Johnson v. Oroweat Foods,* 785 F. 2d 783 (4th Cir. 1986).

Plaintiff argues that the proposed breach of contract claim arises out of a different section of the bylaws than the claim he litigated in the 1996 state court action. Under strikingly similar facts, the Fourth Circuit squarely rejected this exact argument in *Brooks v. The Arlington Hospital Assn.*, 850 F. 2d 191 (4th Cir. 1988). In *Brooks*, the Fourth Circuit affirmed the dismissal of a physician's breach of contract action against a hospital that had

terminated his staff privileges. The Court held that *res judicata*[7]
principles barred his suit because he had previously litigated
another breach of contract claim against the same hospital arising
out of the same events. The Court held that:

> The fact that Dr. Brooks raises in the current suit allegations of bylaws violations not raised in his third suit does not destroy the preclusive effect of the judgment in the third suit. *Res judicata* will bar Dr. Brooks current breach of contract claim ... unless the Order dismissing the third suit was not a judgment on the merits.

*Id.* at 195.

Here, as discussed above, it is undisputed that the judgment in the 1996 state court action was a final judgment on the merits. Under directly controlling precedent, Plaintiff would be barred from bringing a successive breach of contract claim. As Plaintiff's proposed claim is subject to dismissal, it is futile. Accordingly, leave to amend to add this claim should be denied.

---

[7] The term *res judicata* is Latin for "a matter adjudged." *Black's Law Dictionary* 1305 (6th ed. 1990). The term is most commonly used to refer to claim preclusion (which bars subsequent litigation which might have been offered in an earlier action) as distinguished from issue preclusion or collateral estoppel (which bars the re-litigation of a specific issue where that issue was actually determined in an earlier proceeding). *See In re: Microsoft Corp. Antitrust Litigation*, 355 F.3d 322, 325-26 (4th Cir.2004); *see generally Hart & Wechsler's The Federal Courts and the Federal System* 1406-07 (5th ed. 2003).

**III. Conclusion**

For the foregoing reasons, **IT IS HEREBY ORDERED THAT**, consistent with the discussion above, Defendants' motion for summary judgment [doc. 137] is **GRANTED;** and Plaintiff's motion to amend [doc. 128] is **DENIED.**

**IT IS SO ORDERED,**

**Signed: August 12, 2005**

*Graham C. Mullen*
Graham C. Mullen
Chief United States District Judge